IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

TENNISHA A. PUCKETT )
)
v. ) NO. 3-15-0083
) JUDGE CAMPBELL
YATES SERVICES, LLC )

MEMORANDUM

Pending before the Court is Defendant's Motion for Summary Judgment (Docket No. 27). For the reasons stated herein, Defendant's Motion is GRANTED in part and DENIED in part.

FACTS

Plaintiff Puckett worked for Defendant Yates Services from November of 2012 until her termination in December of 2014. Plaintiff took approved Family and Medical Leave Act ("FMLA") leave from work from October 25, 2014, until November 17, 2014.[1] In December of 2014, Plaintiff again requested FMLA leave from Defendant.[2]

Defendant denied Plaintiff's December FMLA request, finding that she did not have a "serious health condition" because she was not treated by a health care provider within seven days of her first day of incapacity. Because of Defendant's denial of Plaintiff's FMLA request, her

---

[1] At that time, her doctor certified that Plaintiff was having severe insomnia and neck and shoulder pain. He stated that Plaintiff would not need to have treatment visits at least twice per year because of this condition or have follow-up treatment appointments or work part-time. Her doctor also stated that Plaintiff's condition would not cause episodic flare-ups that would periodically prevent Plaintiff from performing her job functions.

[2] Plaintiff's doctor's certification form on December 10, 2014, stated that Plaintiff had pain in her lower left rib area and left abdominal region followed with diarrhea for several days and then stools with blood. Her doctor stated that this condition began on November 29, 2014, and would probably last 2-3 weeks. In this certification, her doctor stated that Plaintiff *would* need to have treatment visits at least twice per year due to the condition and that her condition would not cause episodic flare-ups that would periodically prevent her from performing her job functions.

absences from December 2, 2014, to December 12, 2014, counted as ten unapproved absences, resulting, pursuant to Defendant's attendance policies, in her firing on December 18, 2014.

Plaintiff's First Amended Complaint alleges interference and retaliation claims under the FMLA; discrimination, retaliation, and failure to accommodate claims under the Americans with Disabilities Act ("ADA"); and violations of the Fair Labor Standards Act ("FLSA") and Tennessee Wage Regulation Act ("TWRA").

By failing to respond to Defendant's arguments concerning her ADA discrimination and retaliation claims and her FLSA and TWRA claims, Plaintiff has indicated an intent to abandon those claims. A plaintiff is deemed to have abandoned a claim when the plaintiff fails to address it in response to a motion for summary judgment. *Brown v. VHS of Michigan, Inc.*, 545 Fed. Appx. 368, 372 (6th Cir. 2013); *see also* Local Rule 7.01(b). Accordingly, Plaintiff's ADA discrimination, ADA retaliation, FLSA and TWRA claims are DISMISSED. The Court will address the remaining claims: FMLA interference and retaliation, and ADA failure to accommodate.

## SUMMARY JUDGMENT

Summary judgment is appropriate where there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Pennington v. State Farm Mut. Automobile Ins. Co.*, 553 F.3d 447, 450 (6th Cir. 2009). The party bringing the summary judgment motion has the initial burden of informing the Court of the basis for its motion and identifying portions of the record that demonstrate the absence of a genuine dispute over material facts. *Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir. 2003). The moving party may satisfy this burden by presenting affirmative evidence that negates an element of the non-moving party's claim or by demonstrating an absence of evidence to support the nonmoving party's case. *Id*.

2

In deciding a motion for summary judgment, the Court must review all the evidence, facts and inferences in the light most favorable to the nonmoving party. *Van Gorder v. Grand Trunk Western Railroad, Inc.*, 509 F.3d 265, 268 (6th Cir. 2007). The Court does not, however, weigh the evidence, judge the credibility of witnesses, or determine the truth of the matter. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986). The Court determines whether sufficient evidence has been presented to make the issue of fact a proper jury question. *Id.* The mere existence of a scintilla of evidence in support of the nonmoving party's position will be insufficient to survive summary judgment; rather, there must be evidence on which the jury could reasonably find for the nonmoving party. *Rodgers*, 344 F.3d at 595.

## FAMILY AND MEDICAL LEAVE ACT

The FMLA recognizes two types of claims: interference claims, in which employers burden or outright deny substantive statutory rights to which their employees are entitled; and retaliation claims, in which employers initiate adverse employment action against employees for exercising their FMLA rights. *Romans v. Michigan Dept. of Human Servs.*, 668 F.3d 826, 840 (6th Cir. 2012). Here, Plaintiff asserts both types of claims.

To establish that Defendant interfered with her FMLA rights, Plaintiff must show that (1) she was an eligible employee, (2) Defendant was an employer subject to the FMLA, (3) she was entitled to leave under the FMLA, (4) she gave Defendant notice of her intention to take FMLA leave, and (5) Defendant denied her FMLA benefits to which she was entitled. *Romans,* 668 F.3d at 840.

Defendant argues that Plaintiff was not entitled to leave under the FMLA because she did not have a "serious health condition,"[3] which is defined as an illness, injury, impairment, or physical or mental condition that involves (A) inpatient care in a hospital, hospice, or residential medical care facility or (B) continuing treatment by a health care provider. 29 U.S.C. § 2611(11).

It is undisputed that Plaintiff did not receive inpatient care related to her alleged condition. Plaintiff asserts that her condition involved continuing treatment by a health care provider. The federal regulations promulgated under the FMLA provide several ways by which an employee may establish "continuing treatment" for purposes of this statute. 29 C.F.R. § 825.115. Plaintiff relies on two of these permitted methods.

The first is "incapacity and treatment," which is a period of incapacity of more than three consecutive, full calendar days and any subsequent treatment or period of incapacity relating to the same condition, that also involves:

> (1) Treatment two or more times, within 30 days of the first day of incapacity, unless extenuating circumstances exist, by a health care provider . . . or
>
> (2) Treatment by a health care provider on at least one occasion, which results in a regimen of continuing treatment under the supervision of the health care provider.

29 C.F.R. § 825.115(a)(1) and (2).

Plaintiff first argues that her condition in December was the same condition as the one for which she took FMLA leave in October. Nowhere on the December 2014 FMLA request does the doctor indicate that her condition at that time is the same as the condition in October.

---

[3] A plaintiff cannot establish a case of FMLA interference without demonstrating that she suffered from a "serious health condition," as that term is defined in the FMLA. *Taylor v. Autozoners, LLC*, 706 F.Supp.2d 843, 848 (W.D. Tenn. 2010).

The medical certification form in October indicated that Plaintiff was having severe insomnia and neck and shoulder pain. The medical certification form in December indicated that Plaintiff had pain in her lower left rib area and left abdominal region followed with diarrhea for several days and then stools with blood. These are not the same condition.

Plaintiff contends that both her October FMLA request and her December FMLA request related to treatment for chronic electrolyte disorder, a condition for which she had received treatment for years. She argues that she told Defendant her problems were all related to this chronic condition. The citations to her deposition do not bear out this claim. Plaintiff testified that, during the FMLA process, she told two persons that she had chronic low potassium. Docket No. 39-1, pp. 148-49. Plaintiff does not say that she told them her two FMLA requests were for chronic low potassium or that chronic low potassium resulted in any of the conditions for which she sought FMLA leave (severe insomnia, neck and shoulder pain, pain in her lower left rib area and left abdominal region, diarrhea and stools with blood).[4]

There is nothing in either FMLA medical certification about potassium levels or an electrolyte disorder. In a letter dated December 23, 2014, Plaintiff's doctor stated that he had been seeing her for "anemia, electrolyte disorder and stomach issues" since 2002. He indicated that Plaintiff had recently seen him for a severe attack of stomach pains, dizziness, fatigue and blurred vision. This letter does not say or show that Plaintiff's problems in December were the same problems she had in October. Plaintiff has not shown that the problems for which she took FMLA leave in October were the same as the problems for which she sought FMLA leave in December.

---

[4] Plaintiff also testified, upon questioning from her own counsel, that she told Defendant she was having problems with her potassium levels and stabilizing them. Docket No. 39-1, pp. 164-65.

Plaintiff also contends that she received treatment by a health care provider on at least one occasion which resulted in continuing treatment as provided in 29 C.F.R. § 825.115(a)(2). "Treatment by a health care provider" for purposes of subsection (2) means an in-person visit to a health care provider, and the first such in-person treatment must take place within seven days of the first day of incapacity. 29 C.F.R. § 825.115(a)(3).

Defendant contends that, with regard to Plaintiff's December 2014 FMLA request, she did not receive in-person treatment from a health care provider within seven days of her first day of incapacity, November 29, 2014. It is undisputed that Plaintiff did not see her doctor until December 9, 2014. Plaintiff contends, however, that she had an appointment scheduled for December 4, 2014, within seven days of her first day of incapacity, but her doctor became ill and was out of the office on that day. Plaintiff actually saw the doctor on December 9, 2014.

Defendant, relying upon *Giddens v. UPS Supply Chain Solutions*, 70 F.Supp.3d 705 (D. Del. 2014), argues that Plaintiff's excuse for not seeing the doctor within seven days does not warrant an extension of the seven-day requirement. In *Giddens*, the court stated in a footnote that, even though the regulation provides for an extension of the thirty-day requirement of 29 C.F.R. § 825.115(a)(1), the regulation offers no such leeway under 29 C.F.R. § 825.115(a)(2) for the initial visit. *Giddens,* 70 F.Supp.2d at 718, n. 9.

The Court does not read the regulations so restrictively as the Delaware court. Plaintiff has established that she had a scheduled doctor's visit within seven days from the date of her incapacity. Defendant has admitted that Plaintiff informed her supervisor that she had a doctor's appointment

6

for December 4, 2014. Through no fault of her own (the doctor's illness), she had to postpone (at the last minute) that doctor's visit.[5]

The Court is not persuaded by Defendant's argument on this issue. The other cases cited by Defendant involved patients who refused treatment and/or made no attempt to see a doctor within the seven days. For example, in *Johnson v. Dollar General*, 880 F.Supp.2d 967 (N.D. Iowa 2012), the plaintiff refused treatment and "was not precluded from taking advantage of it by some insuperable bar not of his own making." *Id*. at 987. The Court disagrees with the footnote analysis in *Giddens* and finds that Plaintiff has shown that she received treatment by a health care provider in accordance with 29 C.F.R. § 825.115(a)(3).

Given the doctor's certification that her condition would probably last 2-3 weeks and she would need to have treatment visits at least twice per year for that condition, Plaintiff has shown the need for "continuing treatment" under the supervision of her doctor as well.

Plaintiff also contends that she has shown continuing treatment by showing a "chronic serious health condition," which is one which:

> (1) Requires periodic visits (defined as at least twice a year) for treatment by a health care provider . . .;
>
> (2) Continues over an extended period of time (including recurring episodes of a single underlying condition); and
>
> (3) May cause episodic rather than a continuing period of incapacity (e.g., asthma, diabetes, epilepsy, etc.).

29 C.F.R. § 825.115(c).

---

[5] Defendant has admitted that it checked with the doctor's office to confirm, in fact, that the doctor cancelled the initial appointment and that it knew that Plaintiff saw the doctor thereafter "when he could get her in."

7

In connection with Plaintiff's December 2014 FMLA request, her doctor stated that Plaintiff would need to have treatment visits at least twice per year due to the condition, but her condition would *not* cause episodic flare-ups that would periodically prevent her from performing her job functions. Indeed, on both certifications, her doctor stated that her condition would *not* cause episodic flare-ups that would periodically prevent her from performing her job functions. Thus, Plaintiff has not shown a "chronic serious health condition" as defined in the regulations.

The Court finds that Plaintiff has sufficiently shown a "serious health condition" under the "incapacity and treatment" portion of the regulations. Because denial of the second FMLA request ultimately resulted in her termination, Plaintiff has demonstrated a genuine issue of material fact as to whether Defendant interfered with her exercise of FMLA rights.

As for FMLA retaliation, if Plaintiff successfully proves that Defendant wrongfully denied FMLA leave to which she was entitled, a jury could find that her firing was in retaliation for exercising and trying to exercise her FMLA rights. It is undisputed that her firing was because of her alleged violations of the attendance policy and those alleged violations were a result of Defendant's denial of her FMLA leave. Accordingly, the retaliation issue will also have to be determined by the trier of fact at trial.

For these reasons, Defendant's Motion for Summary Judgment on Plaintiff's FMLA claims is DENIED.

## AMERICANS WITH DISABILITIES ACT

Plaintiff alleges in her First Amended Complaint that her electrolyte disorder is a "disability" within the meaning of the ADA. She contends that Defendant refused to allow her reasonable accommodation for that disability as required by the ADA.

Under the ADA, an employer must make reasonable accommodations for the known physical or mental limitations of an otherwise qualified individual with a disability. *Molina-Parrales v. Shared Hospital Servs. Corp.*, 992 F.Supp.2d 841, 853 (M.D. Tenn. 2014). The Plaintiff bears the initial burden of requesting an accommodation and showing that the accommodation is objectively reasonable. *Burress v. City of Franklin, TN*, 809 F.Supp.2d 795, 812 (M.D. Tenn. 2011).

Defendant does not dispute, for purposes of this Motion, that Plaintiff has a disability. Defendant maintains, however, that Plaintiff never requested an accommodation. The facts surrounding this issue are intertwined with Plaintiff's request for FMLA leave. Plaintiff asserts that she requested time off work, which was her request for FMLA leave *and* a request for a reasonable accommodation under the ADA.[6]

FMLA leave is not a reasonable accommodation under the ADA; rather, it is a right enforceable under a separate statutory provision. "The ADA and the FMLA have divergent aims, operate in different ways, and offer disparate relief." *Trevino v. United Parcel Service*, 2009 WL 3423039 at * 12 (N.D. Tex. Oct. 23, 2009) (citing *Navarro v. Pfizer Corp.,* 261 F.3d 90, 101 (1st Cir. 2001)). For example, under the FMLA, the initial inquiry is whether the employee has a "serious health condition;" under the ADA, the initial inquiry is whether the employee has a "disability," a different standard.

The Court notes that Plaintiff testified that she never asked anyone at Defendant for an accommodation. She also testified that she was capable of performing her job, that she never went to her supervisor or anyone in human resources to say she needed help to perform her job, and that

---

[6] Plaintiff argues that she went to her supervisor and human resources to inform them that she needed time off from work due to the electrolyte disorder, but her citation to her own deposition does not support that fact. Docket No. 27-1, pp. 22-23.

she never used the word "disability" when she talked with the human resources employees or anyone else at Defendant.[7]

Because Plaintiff never asked for a reasonable accommodation under the ADA, Defendant's duty to engage in an interactive process with Plaintiff never arose. *Deister v. AAA Auto Club of Michigan*, 91 F.Supp.3d 905, 928 (E.D. Mich. 2015); *Belasco v. Warrensville Heights City School Dist.*, 2015 WL 8538096 at * 8 (6th Cir. Dec. 11, 2015).

For these reasons, Defendant's Motion for Summary Judgment on this claim is granted, and Plaintiff's ADA claim for failure to accommodate will be dismissed.

## CONCLUSION

As stated herein, Defendant's Motion for Summary Judgment (Docket No. 27) is GRANTED in part and DENIED in part. Plaintiff's claims under the ADA, the FLSA, and the TWRA are DISMISSED. Plaintiff's FMLA claims will be tried, as previously ordered (Docket No. 20), on May 31, 2016.

IT IS SO ORDERED.

_____
TODD J. CAMPBELL
UNITED STATES DISTRICT JUDGE

---

[7] Docket No. 27-1, pp. 158-161.